

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-11-2007

# Budiman v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3251

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Budiman v. Atty Gen USA" (2007). *2007 Decisions.* Paper 103.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/103

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-3251
_____

HENDRI BUDIMAN,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A96 259 780)
Immigration Judge:  Miriam K. Mills
_____

Submitted Under Third Circuit LAR 34.1(a)
October 22, 2007

Before:  FISHER, ALDISERT and GREENBERG, *Circuit Judges*.

(Filed:  December 11, 2007)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Hendri Budiman petitions for review of the final decision of the Board of

Immigration Appeals ("BIA") ordering his removal from the United States.  He appeals

the BIA's denial of his applications for asylum and withholding of removal.[1]  For the

reasons set forth below, we will deny the petition.

I.

Because we write exclusively for the parties, who are familiar with the factual and

procedural history of this case, we will provide only those facts necessary to our analysis.

Hendri Budiman is a citizen of Indonesia who is of Chinese ethnicity, and since he

arrived in the United States, he has become a Christian.  He entered the United States on a

student visa on June 5, 2001.  However, Budiman did not attend college after August 31,

2001, and on April 22, 2003, the Immigration and Naturalization Service began removal

proceedings by sending him a Notice to Appear.  Budiman filed applications for asylum,

withholding of removal, and relief under the Convention Against Torture ("CAT").

During a subsequent hearing, Budiman presented evidence to the Immigration

Judge ("IJ") that Muslim Indonesians had abused him personally because he is of Chinese

ethnicity.  In September 1995, Muslim Indonesians approached his car containing him

and his sister, demanded money, and threatened to shatter the car window.  When he

---

[1]Budiman's appeal mentions that the IJ and the BIA denied his claim for relief under the CAT.  We have held that an alien has waived the right to appeal a claim for relief under the Convention Against Torture ("CAT") where the alien has not raised any argument regarding the denial of the claim "except by mentioning the Convention in her concluding paragraph."  *Lie v. Ashcroft*, 396 F.3d 530, 532 n.1 (3d Cir. 2005).  Here, Budiman did not argue that he should have been granted relief under the CAT in his initial brief to this Court, and he did not respond to the Attorney General's argument that he had waived his claim.  Therefore, to the extent that Budiman's appeal includes an appeal of the CAT claim, we deem it to have been waived.

walked to and from school in 1996, Muslim Indonesians insulted him, pushed him, and threw rotten eggs and human waste at him. In June 1996, he planned to report the Muslim Indonesians' conduct to the police, but they threatened to burn his house down so he did not file the report. In May 1997, Muslim Indonesians demanded money and hit him when he told them that he did not have any money to give them. In May 1999, Muslim Indonesians demanded money and hit him even though he complied.

Budiman also presented evidence that Muslim Indonesians had abused others because of their Chinese ethnicity and Christian religion. In 1995, a Muslim Indonesian grabbed his sister, and in 2000, his sister heard a rumor that Muslims were planning on burning down all of the Chinese-owned stores in the area, which included her store. On multiple occasions, the Muslim Indonesians attacked Budiman's Chinese friends and stole their motorbikes. Finally, Budiman presented the IJ with articles and reports regarding the treatment of Chinese Christians in Indonesia.

The IJ denied his application, finding that Budiman was not credible. The BIA reversed the IJ's credibility determination, but affirmed the denial of his application, finding that the evidence he presented was insufficient to carry his burden of proof under

the standards for withholding of removal and protection under the CAT.[2] This timely petition for review followed.

## II.

We have jurisdiction to review a final order of removal pursuant to 8 U.S.C. § 1252(a)(1). "Only the decision by the BIA is a final order of removal . . . subject to our review. We therefore do not review the IJ's opinion in its own right." *Chukwu v. Att'y Gen.*, 484 F.3d 185, 189 (3d Cir. 2007) (internal quotation marks and citation omitted). Therefore, where, as here, the BIA did not adopt a portion of the IJ's decision, we review only the BIA's opinion. *Id.* Our standard of review is the deferential "substantial evidence" standard. *Balasubramanrim v. INS*, 143 F.3d 157, 161 (3d Cir. 1998) (internal quotation marks and citation omitted). "[T]he BIA's finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft*, 242 F.3d 477, 483-84 (3d Cir. 2001).

---

[2]During a hearing before the IJ, Budiman's counsel discussed Budiman's asylum application status and stated that "he made a decision . . . not to apply." The IJ interpreted this statement as a withdrawal of Budiman's asylum application, and only considered Budiman's applications for withholding of removal and relief under the CAT. In his brief to the BIA, Budiman did not address the IJ's holding that he had withdrawn his asylum application, but instead argued the asylum application on the merits. As a result, the BIA did not review Budiman's claim that the IJ erred in denying his asylum application because it found that "the respondent affirmatively declined to seek asylum under [the Immigration and Nationality] Act."

III.

Budiman petitions for review of the BIA's denial of his application for withholding of removal.[3] Pursuant to the Immigration and Nationality Act ("INA"), the Attorney General may not remove an alien to his country of origin if his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). In order to qualify for withholding of removal under § 1231, an alien must demonstrate either past persecution, in which case a rebuttable presumption exists that the alien will suffer future persecution, or future persecution. 8 C.F.R. § 1208.16(b)(1), (2). An alien must show the threat by a clear probability. *INS v. Stevic*, 467 U.S. 407, 430 (1984). "A clear probability means 'more likely than not.'" *Tarrawally v. Ashcroft*, 338 F.3d 180, 186 (3d Cir. 2003) (quoting *Stevic*, 467 U.S. at 429-30).

Substantial evidence supports the BIA's determination that Budiman failed to show that it is more likely than not that his life or freedom would be threatened in Indonesia because of his race, religion or nationality. The abusive behavior Budiman

_____

[3]To the extent that Budiman argues that the IJ and the BIA erred in denying his asylum application, we do not have jurisdiction to review those claims. An alien must exhaust his administrative remedies before filing an appeal with this Court. 8 U.S.C. § 1252(d)(1). To exhaust his administrative remedies, the alien must present the issue to the BIA. *See Bejar v. Ashcroft*, 324 F.3d 127, 132 (3d Cir. 2003). In his brief to the BIA, Budiman did not argue that he did not withdraw his asylum application before the IJ. Therefore, he has not exhausted his administrative remedies, and we do not have jurisdiction to review his asylum application.

5

says he experienced did not rise to the level of "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993). Isolated criminal acts, such as the robberies Budiman described, are insufficient to support a finding of past persecution. *See Lie v. Ashcroft*, 396 F.3d 530, 536 (3d Cir. 2005). Moreover, Budiman's claim that he fears future persecution fails because Budiman's family remains in Indonesia and has not suffered any harm, and no evidence exists that the Indonesian government committed any of these acts or is "unable or unwilling to control" the acts. *See id.* at 537 (internal quotation marks and citation omitted).[4] Therefore, we agree with the BIA that Budiman failed to demonstrate that he qualified for withholding of removal under § 1231.

IV.

For the reasons set forth above, we will deny Budiman's petition for review.

---

[4]Budiman argues that the IJ did not adequately address whether a pattern or practice of persecution of Chinese Christians exists in Indonesia. We have held that an IJ cannot hold that the petitioner did not establish a well-founded fear of persecution without specifically addressing whether the petitioner established that a pattern or practice of persecution exists. *Sukwanputra v. Gonzales*, 434 F.3d 627, 637 (3d Cir. 2006). In the present case, we are reviewing the BIA's decision, not the IJ's, and the BIA specifically stated that the petitioner did not demonstrate "that there is a pattern or practice of persecution of, as opposed to general societal discrimination against, ethnic Chinese or Christians in Indonesia." Thus, the BIA's statement was sufficient to demonstrate that it had considered this argument.

6